IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT AUTHORIZING A DNA SAMPLE COLLECTION FROM COLLIN DAVIS | Case No. 18-2906 JMC<br><br>**Filed Under Seal** |
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (443) 694-0725 ("TARGET TELEPHONE 1") AND (443) 414-5837 ("TARGET TELEPHONE 3"), THAT ARE STORED AT PREMISES CONTROLLED BY SPRINT; and (410) 855-2369 ("TARGET TELEPHONE 2"), THAT IS STORED AT PREMISES CONTROLLED BY AT&T | 18-2907 JMC<br><br>Case No. 18-2908 JMC<br><br>**Filed Under Seal**<br><br>18-2909 JMC |

**AFFIDAVIT IN SUPPORT OF**
**APPLICATIONS FOR SEARCH WARRANTS**

I, David Cheplak, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

**INTRODUCTION**

1. The ATF and Baltimore Police Department ("BPD") have been investigating a carjacking and homicide that occurred in Baltimore, Maryland on September 25, 2018. The victim of the carjacking and homicide was Anthony RAYNOR. Collin DAVIS is believed to be one of at least two subjects involved in the crime. This affidavit is being submitted in support of an application for a search warrant to obtain samples of DNA for comparison purposes in the form of hair and saliva from the following suspect in a carjacking/homicide investigation in violation of 18 U.S.C. § 2119 (Carjacking), and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime of Violence):

1

18-2906 JMC - 18-2909 JMC

Collin Anthony DAVIS, a man born in 1986, assigned a Social Security account number ending in 5195, and having been assigned an FBI number ending in 5DC3. DAVIS is further described as being approximately five feet, ten inches tall, and approximately 180 pounds. DAVIS's address of record is 8001 Dewberry Lane, Apartment 110, Pasadena, Maryland, in the District of Maryland. DAVIS is further described in *Attachment A*.

2. The applied for warrant would authorize members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the investigation, to obtain DNA contained within hair lock and saliva samples from DAVIS.

3. The warrant also seeks to authorize the disclosure of information related to three telephone numbers (**Target Telephones 1-3**, collectively "**Target Telephones**") to include historical cellular site information, as further described in Attachment B-1, B-2 and B-3 ("the Historical Cell Site Warrant") for the following cellular telephones:

    a. information associated with the device assigned call number **443-694-0725** ("**Target Telephone 1**"), a phone used by DAVIS.[1] The information is stored at premises controlled by Sprint ("Service Provider 1"), a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas. *See Attachment B-1*.

    b. information associated with the device assigned call number **410-855-2369** ("**Target Telephone 2**"), a phone used by Anthony Michael RAYNOR.[2] The information is stored at premises controlled by AT&T ("Service Provider 2"), a wireless telephone service provider headquartered at 11760 US Highway 1, North Palm Beach, Florida. *See Attachment B-2*.

    c. information associated with the device assigned call number **443-414-5837** ("**Target Telephone 3**"), a second phone used by RAYNOR.[3] The information is stored

---

[1] Investigators requested the subscriber information for this phone on October 23, 2018. Investigators link this phone to DAVIS through records kept in the ordinary course of business in the State of Maryland as described in the Probable Cause section. *See infra*.

[2] The subscriber is listed as Tony Williams, 7698 Dorchester Blvd., Hanover, Maryland 21076 pursuant to information received from a grand jury subpoena. Investigators link this phone to RAYNOR through information received from RAYNOR's family members as described in the Probable Cause section. *Id*.

[3] The subscriber is listed as Brian S., 8222 Kilmory Court, Severn, Maryland (as of March 2015) pursuant to information received from a grand jury subpoena. RAYNOR was the previous subscriber (since 2009) with the same address. Investigators link this phone to RAYNOR through

2

18-2906 JMC — 18-2909 JMC

at premises controlled by Sprint ("Service Provider 1"), a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas. *See Attachment B-3.*

4. The information to be searched is described in the following paragraphs and in Attachment B-1, B-2 and B-3. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider(s) to disclose to the government copies of the information further described in Section I of Attachment C. Upon receipt of the information described in Section I of Attachment C, government-authorized persons will review the information to locate items described in Section II of Attachment C.

5. I submit this affidavit for the limited purpose of securing the requested warrants. I have not included details of every aspect of this investigation to date. Rather, I have set forth only those facts that I believe are necessary to establish probable cause supporting the warrants. I have not, however, intentionally omitted information that would tend to defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, a review of documents and other evidence, and conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

6. I submit there is probable cause exists to believe that DAVIS and at least one other suspect committed an armed carjacking of RAYNOR on September 25, 2018, in Baltimore, Maryland, and while doing so, used **Target Telephone 1** in furtherance of 18 U.S.C. § 2119 (Carjacking) and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime of Violence).

---

information received from RAYNOR's family members as described in the Probable Cause section. *Id.*

18-2906 JMC — 18-2909 JMC

RAYNOR possessed **Target Telephone 2** and **Target Telephone 3** prior to and at the time that he was murdered. Therefore probable cause exists to search the information described in Attachments B-1, B-2 and B-3 for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment C.

### AFFIANT BACKGROUND

7. I have been a Special Agent with ATF since 2007 and I am currently assigned to the ATF Baltimore Field Division, Group IV. I attended the Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco, Georgia, for a combined period of twenty-six weeks. I received extensive training in the provisions of the federal firearms and narcotics laws administered under Title 18, Title 21 and Title 26 of the United States Code.[4]

8. As an ATF agent, I conducted and participated in numerous investigations concerning the illegal possession of firearms, federal controlled substance laws, and the commission of violent crimes. I received specialized training and personally participated in various types of investigative activities, including, but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who had knowledge of firearms and controlled substance laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) Title III investigations; and (h) the handling and maintenance of evidence.

---

[4] Prior to joining ATF, I received a bachelor's and master's degree from the University of Florida. I worked for two years as a federal police officer with the Federal Bureau of Investigation ("FBI") Police Unit.

4

18-2906 JMC — 18-2909 JMC

9.  I previously led multiple investigations involving carjacking and the use of firearms. Accordingly, I am familiar with federal carjacking statues and the methods employed by those who perpetrate these acts. I have been the affiant on search warrants and made numerous arrests in the course of my career for carjacking and other violent crime. I know based on my training and experience that Deoxyribonucleic Acid ("DNA") can be found on items such as clothing and firearms and can be compared to a sample of DNA from a known person. This comparison can help identify or eliminate suspects. I also know that the location of cell phones provided through cell site information can assist in the identification of suspects and victims.

## PROBABLE CAUSE

10.  On September 25, 2018, at approximately 11:59 p.m., a BPD officer responded to the 5100 block of Curtis Avenue in Baltimore, Maryland in response to a shooting. The officer located RAYNOR, lying face down in the street suffering from apparent gunshot wounds to the head and torso. There were no shell casings; however, two projectiles were recovered from the scene. RAYNOR was transported to Shock Trauma where he was pronounced dead.[5]

11.  Investigators obtained surveillance camera footage from the area that showed a silver 4-door sedan driving on Curtis Avenue shortly before the time that RAYNOR's body was discovered in the street. They also interviewed a witness who reported that he/she observed a silver sedan pull over on Curtis Avenue where he/she was able to see movement of multiple individuals within the vehicle on both the passenger side and driver side. He/she heard the doors of the vehicle open and slam shut multiple times as if somebody was trying to get out of the vehicle. He/she then observed the vehicle continue northbound a short distance on Curtis Avenue before

---

[5] The medical examiner found the manner and cause of death to be homicide/gunshot wounds. The autopsy also revealed that RAYNOR's throat had been cut.

5

stopping for a second time. At that point, the witness heard multiple gunshots, noting that the first shot was muffled, while the second was loud.

12. Investigators contacted RAYNOR's family. They reported seeing RAYNOR at approximately 6:00 p.m. on September 25 and that he had been driving a 2011 silver Chevy Cruse bearing Maryland plate 1BT6689. Investigators showed a family member a screen shot of the silver 4-door sedan from the surveillance camera footage. The family member identified the vehicle as RAYNOR's car. The family member also said RAYNOR used two cellular telephone numbers, **Target Telephone 2** and **Target Telephone 3**.

13. Investigators found a License Plate Reader ("LPR") device approximately one mile from the location of RAYNOR's body. They conducted a query of RAYNOR's vehicle tag and learned the vehicle passed the device three different times on September 25 (8:45 p.m., 9:10 p.m. and 11:43 p.m.).[6]

14. On September 26, 2018, investigators found RAYNOR's vehicle in an alleyway approximately .6 miles away from where RAYNOR's body was discovered. Investigators searched the vehicle and found a single bullet hole in the rear passenger side that appeared to come from the interior of the vehicle and travel outward supporting the theory that someone was shot inside the vehicle.[7] Investigators also saw suspected blood throughout the interior of the vehicle and recovered two pieces of a torn bloody white t-shirt that had been tied into knots. Investigators swabbed the vehicle for DNA.

---

[6] Investigators believe RAYNOR died at approximately 11:59 p.m. There were no LPR "hits" for the vehicle after 11:43 p.m.

[7] The Honorable Flynn Owens sitting in the District Court of Maryland for Baltimore City authorized the search warrant.

6

18-2906 JMC  —  18-2909 JMC

15. Investigators developed a confidential source ("CS-1") who provided information about a potential suspect.[8] According to CS-1, RAYNOR had an associate named Collin DAVIS who lived close to where RAYNOR was killed. A review of data from several credit monitoring services revealed that DAVIS had resided at 1623 Spruce Street (the rear of which is adjacent to where RAYNOR's vehicle was recovered) for several months during 2018. Investigators developed a second confidential source ("CS-2")[9] who confirmed that DAVIS and his sister previously resided at 1623 Spruce Street. CS-2 identified photographs of DAVIS and his sister as the occupants of 1623 Spruce Street. Additionally, CS-2 identified a red Honda Accord bearing Maryland license plate 3EFM29 as a vehicle driven by DAVIS.[10] LPR data shows that DAVIS' vehicle was parked in front of 1623 Spruce Street as recently as July 2018.[11]

16. DAVIS is currently on probation and reports to the Maryland Department of Public Safety and Correctional Services ("MDPSCS"). A review of MDPSCS records revealed that DAVIS's probation agent knew DAVIS and his sisters had been residing at 1623 Spruce Street, even though DAVIS had provided the agent his mother's address in Pasadena, Maryland as his address of record. The file also listed DAVIS's cell phone as **Target Telephone 1**. Furthermore, a review of a Howard County (Maryland) Police Department reports confirmed that officers spoke with DAVIS on multiple occasions by calling him on **Target Telephone 1**.[12]

---

[8] CS-1 does not have a criminal record and is cooperating with law enforcement as part of his/her civic duty. CS-1 has not received any consideration or financial compensation for the information.
[9] CS-2 does not have a criminal record and is cooperating with law enforcement as part of his/her civic duty, CS-2 has not received any consideration or financial compensation for the information.
[10] The vehicle is registered to DAVIS's mother. Investigators know DAVIS was stopped by police officers as recently as August 2018 while driving the vehicle according to police records.
[11] CS-2 noted that DAVIS and his sister were evicted from the residence on Spruce Street sometime in early October 2018.
[12] The calls were in reference to domestic situations involving DAVIS's daughter and her mother.

7

18-2906 JMC — 18-2909 JMC

17. I reviewed the call detail records ("CDRs") for RAYNOR's phones (**Target Telephone 2** and **3**) as provided pursuant to a grand jury subpoena. I discovered that on the evening that RAYNOR was murdered (September 25), **Target Telephone 1** exchanged approximately 42 text messages with **Target Telephone 2** between 3:45 p.m. and 8:49 p.m. As previously noted, LPR data showed that RAYNOR's vehicle first arrived in the vicinity of DAVIS's residence at approximately 8:45 p.m. that evening. I also know that RAYNOR used **Target Telephone 3** during the evening of September 25 to communicate with his brother.[13] I believe that analysis of historical cell site data for the **Target Telephones** will reveal that all three phones were together for the remainder of that evening and will show a similar path of travel both up to and after the time that RAYNOR was murdered.[14]

## DNA AUTHORIZATION REQUEST

18. I believe that DAVIS's DNA will be on items recovered from RAYNOR's vehicle. A known sample of his DNA is required in order to test and compare any and all DNA recovered. Accordingly, I am requesting authorization for a warrant to obtain samples of DNA for comparison purposes in the form of hair and saliva from DAVIS to compare to suspected blood and other evidence found in RAYNOR's vehicle in relation to a carjacking/homicide investigation in violation of 18 U.S.C. § 2119 (Carjacking), and 18 U.S.C. § 924c (Use of a Firearm in Furtherance of a Crime of Violence.

---

[13] I reviewed a series of text messages RAYNOR's brother provided to investigators after the murder. The last text message was exchanged between the brothers on September 25 at 9:55 p.m.

[14] Neither of RAYNOR's cellular telephones were on his person at the time that his body was discovered, nor were they recovered during a search of his vehicle. As of the writing of this warrant, neither phone has been found. Historical cell site data may assist law enforcement in determining where RAYNOR's phones went after he was murdered and aid in the recovery of additional evidence.

8

18-2906 JMC — 18-2909 JMC

19. I respectively request that the Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents, to obtain DNA samples from DAVIS, so that the DNA sample may be compared to evidence collected during the course of this investigation, to include but not limited to, items recovered in the victim's vehicle and at the crime scene.

## AVAILABILITY OF CELL PHONE LOCATION INFORMATION

20. Based on my training and experience, I know that Sprint and AT&T (the "Service Providers") are companies that provides cellular telephone service to the general public, and are therefore a provider of "electronic communication service" pursuant to 18 U.S.C. §§ 2510(15) and 2703(c). I have been advised that Sprint and AT&T, which service the **Target Telephones**, have the technical means promptly to generate and record latitude and longitude data, to include Global Positioning System (GPS), Round Trip Time Location Information (RTT), and Precision Location Information (PLI), with respect to a specified wireless telephone by measuring its position relative to other known reference points. The information provided can be used to verify the vicinity of the **Target Telephones**. It will not provide the **Target Telephone's** exact pinpoint location. For example, the information provided by the Service Providers will not indicate where the user is precisely located within a particular residence, but instead may provide the general area where the user is located and is an approximate range which can be as low as a few meters, and up to thousands of meters of the user.

21. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering

9

18-2906 JMC  —  18-2909 JMC

specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data. I also know that wireless providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use the information for various business-related purposes.

22.     Based on my training and experience, I also know that wireless providers typically collect and retain information about their subscribers in their normal course of business. The information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.

23.     Based on the foregoing, I also request that the Court issue the proposed warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) and that the Court direct the Service Providers to disclose to the government any information described in Attachment C that is within the possession, custody, or control of the service providers. I also request that the Court direct the Service Providers to furnish the government all information, facilities, and

18-2906 JMC — 18-2909 JMC

technical assistance necessary to accomplish the collection of the information described in Attachment C unobtrusively and with a minimum of interference with the Service Providers' services, including by initiating a signal to determine the location of **Target Telephones** on their network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Providers for reasonable expenses incurred in furnishing such facilities or assistance.

24.   I further request that the Court order that all papers in support of the application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing investigation that is not public, and which discusses law enforcement's conversations with a confidential source. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.


_____
Special Agent David Cheplak
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn and subscribed before me on October 25, 2018.

_____
The Hon. J. Mark Coulson
United States Magistrate Judge

## ATTACHMENT A

Person to Be Searched

18 - 2 9 0 6 JMC



Collin Anthony DAVIS

1

**ATTACHMENT B-1**  18 - 2 9 0 7 JMC

**Property to Be Searched**

1. This warrant applies to records and information associated with the cellular telephone assigned call number **443-694-0725** ("**Target Telephone 1**"), a phone used by Collin DAVIS. The information is stored at premises controlled by Sprint ("Service Provider 1"), a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.

## ATTACHMENT B-2

### Property to Be Searched

18-mj-2909-JMC

1. This warrant applies to records and information associated with the cellular telephone assigned call number **410-855-2369 ("Target Telephone 2")**, a phone used by Anthony RAYNOR. The information is stored at premises controlled by AT&T ("Service Provider 2"), a wireless telephone service provider headquartered at 11760 US Highway 1, North Palm Beach, Florida.

## **ATTACHMENT B-3**

**Property to Be Searched**

18-mj-2908-JMC

1.      This warrant applies to records and information associated with the cellular telephone assigned call number **443-414-5837 ("Target Telephone 3")**, a phone used by Anthony RAYNOR. The information is stored at premises controlled by Sprint ("Service Provider 1"), a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.

## ATTACHMENT C

### Particular Things to be Seized

**Information to be Disclosed by the Provider**

I.  To the extent that the information described in Attachments B1 – B3 is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the accounts listed in Attachment B-1, B-2 and B-3 for the time period **September 24, 2018 – September 26, 2018**.

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

18-2907 JMC        18-2909 JMC

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received.

**Information to be Seized by the Government**

II.    All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 2119, Carjacking, and Title 18 U.S.C. § 924c, Use of a Firearm in Furtherance of a Crime of Violence, involving the accounts listed in Attachment B-1, B-2 and B-3 during the period **September 24, 2018 – September 26, 2018**.