

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Lindsey McCulley*  
*Assistant United States Attorney*  
*Lindsey.McCulley@usdoj.gov*

*Suite 400*  
*36 S. Charles Street*  
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4948*  
*MAIN: 410-209-4800*  
*FAX: 410-962-0717*

January 27, 2021

**VIA EMAIL**
Katherine Newberger, Esq.
Christian Lassiter, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201

Michael Lawlor, Esq.
6305 Ivy Lane, Suite 608
Greenbelt, MD 20770

      Re:    United States v. Collin Davis
              Case No. RDB-19-398
              Expert Disclosure and Miscellaneous Matters

Dear Counsel:

      Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and the discovery agreement in this case, we are providing you with a summary of the expert witness testimony the government intends to use during its case-in-chief at trial. Because this letter is being sent three and a half months before trial, we respectfully request that this not be a "final" list. Issues may appear during the course of trial preparation, and during the motions hearing that may require additions to the list. However, we do not believe this will happen, and will discuss with you in advance if this issue does arise. We are also happy to discuss any stipulations that may reduce the number of experts called to testify at trial.

1. **Dr. Carol Allen, M.D., Maryland Office of the Chief Medical Examiner ("OCME")—Forensic Pathology**

      Dr. Allen will be qualified in the area of forensic pathology. She will testify as to the contents of the autopsy report for Anthony Raynor, which was produced to you at H-0038 to H-0056. Dr. Allen's CV is enclosed. We plan to meet with Dr. Allen the week of February 1, 2021, after which we shall supplement her opinion. Thank you for your patience.

2. **Victor Meinhart, Baltimore Police Department ("BPD")—Firearms Examination**

Mr. Meinhart will be qualified as an expert in the field of firearms and ammunition. Mr. Meinhart will testify as to the contents of the reports produced to you at R-ATF-515 to R-ATF-519. We made a request for the full file earlier this month and will supplement this disclosure upon receipt. With respect to the reports, he will testify that he conducted a microscopic comparison examination of the bullet specimens recovered from the scene of the Raynor homicide with the two firearms recovered from the place where Davis was staying and that the bullets were not fired by those weapons. He will also testify that both firearms were operable. Mr. Meinhart's CV is enclosed.

3. **Christy Silbaugh, BPD-DNA**

Ms. Silbaugh will be qualified in the areas of forensic DNA testing, processing, identification, and comparison. Ms. Silbaugh will be qualified in the areas of forensic DNA testing and analysis. Her testimony will cover the following topics, among others: (1) what DNA is; (2) how DNA varies from person to person; (3) how evidence is processed for DNA; (4) how DNA is extracted from samples; (5) what procedures are used to conduct DNA typing; (6) the procedures used in the instant case to process evidence for DNA, to extract DNA, to conduct DNA typing, and to produce statistical calculations; (7) the significance of a DNA match and its statistical expressions; (8) the possible outcomes from a DNA comparison test; and (9) the results of the DNA examinations she conducted in the instant case.

Ms. Silbaugh will testify as to the contents of the DNA reports produced to you at R-LAB-BPD-0001 to R-LAB-BPD-0050, R-LAB-BPD-0087 to R-LAB-BPD-0250, and R-ATF-0511 to R-ATF-0514. With respect to those reports, she will testify to the DNA testing conducted on the ligature used to tie up Raynor and on the steering wheel of Raynor's vehicle, the two firearms, Raynor, and Mr. Collins. She will further testify that she compared the resulting profiles and made certain determinations which are noted in her report.

Finally, Ms. Silbaugh may also provide "negative" DNA testimony, giving her expert forensic opinion as to why evidence submitted for analysis may or may not yield DNA, and whether DNA suitable for comparison was compared to the known DNA samples provided. Ms. Silbaugh's CV is enclosed.

4. **Terri Labbe, BPD-Serology**

Ms. Labbe will be qualified in the areas of serology, which is the diagnostic examination of blood serum and other bodily fluids. She will be qualified in the areas of forensic serology testing and analysis. Her testimony will cover the following topics, among others: (1) what serology is; (2) how and what type of evidence is processed for serology; (3) how serology is extracted from samples; (4) what procedures the samples undergo to prepare for DNA testing; (5) the procedures used in the instant case to process evidence for serology, and to extract samples; and (6) the results of the examinations she conducted in the instant case.

Ms. Labbe will testify as to the contents of the serology reports produced to you at R-LAB-BPD-0011 to R-LAB-BPD-0018, R-LAB-BPD-0051 to R-LAB-BPD-0277, and any work she did in the reports listed above for Ms. Silbaugh. With respect to those reports, she will

testify to the serology testing conducted on clothing found at the homicide scene and swabs taken from Raynor's vehicle.

Finally, Ms. Labbe may also provide "negative" serological testimony, giving her expert forensic opinion as to why evidence submitted for analysis may or may not contain suitable samples. Ms. Labbe's CV is enclosed.

### 5. Sean Dorr, BPD-Latent Prints

Mr. Dorr will be qualified in the areas of latent print testing, processing, identification, and comparison. Mr. Dorr's testimony will cover the following topics, among others: (1) what latent prints are and how they may be left on items; (2) the reasons for why latent prints may be left on certain items, or why latent prints may not be found on certain items (i.e. conditions, environment, sweat); (3) how latent prints are developed, lifted, and compared; (4) the difference between identifiable and non-identifiable prints; (5) the examination and comparisons she made between latent prints recovered from items of evidence in this case with the known latent prints of the defendant; (6) the results of her examination, namely, that there was a match of a known latent print with a recovered latent print from an item of evidence in this case (the steering wheel in Raynor's car).

Mr. Dorr will testify as to the contents of the latent print reports produced to you at R-LAB-BPD-00051 to R-LAB-BPD-0086, R-LAB-BPD-0251 to R-LAB-BPD-0277, and R-ATF-0520 to R-ATF-0522. With respect to those reports, he will testify to the latent print screening and/or testing conducted and the one suitable print that was located in Raynor's vehicle. He will further testify that he compared the resulting profiles and made certain determinations which are noted in his report.

Finally, Mr. Dorr may also provide "negative" latent print testimony, giving his expert forensic opinion as to why evidence submitted for analysis may or may not yield latent prints, and whether latent prints suitable for comparison was compared to the known latent print samples provided. Mr. Dorr's CV is enclosed.

### 6. Special Agent Mathew Wilde, Federal Bureau of Investigation ("FBI")—Cell Site Analysis

Special Agent Wilde will be qualified as an expert in the analysis of cellular telephone location information, including cell site/tower location information and GPS latitude and longitude location information. He will testify regarding the locations of the cellular telephones with call numbers (443)-694-0725, belonging to Collin Davis, and (410)-855-2369, belonging to Anthony Raynor, on the day of Raynor's murder on September 25, 2018. The data for these numbers was previously produced in discovery and SA Wilde will discuss how he used the date to create a report. A draft of this report is attached and produced as R-CAST-0001 to R-CAST-0023. SA Wilde anticipates a final report to be done next week, which we will send immediately upon receipt. Again, we appreciate your patience.

Special Agent Wilde will testify both as an expert witness and as a summary witness pursuant to Federal Rule of Evidence 10006 regarding the cellphone records previously produced to you. Special Agent Wilde's CV is enclosed.

### 9. TBD, ATF—Digital Forensics

At this time we do not believe we will call anyone to testify regarding the forensic examinations of the cellular devices seized during this investigation. If we are to call such an expert, they would testify about the use of Cellebrite and other tools to extract data from cellular telephones and about the processes used to verify the authenticity of cellular telephone extractions. These extractions were previously provided in discovery. However, it is unclear whether we will introduce anything from any phones recovered during this investigation. If this is an expert you need to know sooner rather than later, then we will supplement this letter within 14 days as to this expert.

**********

This letter shall serve as notice regarding Rule 609(b). If Mr. Davis testifies, we will seek to introduce evidence of all of his prior adult convictions under Federal Rule of Evidence 609. Please consider this as advance notice if you believe it is appropriate under Federal Rule of Evidence 609(b).

If you intend to qualify any witnesses as experts, please provide their names, CVs, the opinions they will offer, the bases for their opinions, and any relevant reports they have created as soon as practicable.

Finally, to date, we have not received any alibi notice under Rule 12.1. Accordingly, we have concluded that no alibi defense is being offered. Please advise us immediately if you have a different position or interpretation of the rule.

Please contact me with any questions or concerns.

Very truly yours,

Robert K. Hur
United States Attorney

_____

Patricia McLane
Lindsey McCulley
Assistant United States Attorneys